**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ANTONIO CASTILLO,
RAUL CASTRILLO,                                        CASE NO.: 25-cv-22347-RKA
MARGARELYS FLORES,
HUSSEIN KARIM KARIM
LISABETH REVILLA,
MARICELLYS DEL CARMEN CASTRILLO
YAMIRELLYS SABBAGH,
JESIKA NAVAS URRIBARRI,
JENNIFER RAMOS,

     *Plaintiffs,*

v.                                                                        **DEMAND FOR JURY TRIAL**

SHOMA GROUP, LLC,
a Florida Limited Liability Company d/b/a
SHOMA BAZAAR, SHOMA BAZAAR ONE, LLC
MASOUD SHOJAEE, PAUL J. PRICE, and
STEPHANIE SHOJAEE

     *Defendants.*

_____/

## THIRD AMENDED COMPLAINT

     Plaintiffs ANTONIO CASTILLO, RAUL CASTRILLO, MARGARELYS FLORES, HUSSEIN KARIM KARIM, LISABETH REVILLA, MARICELLYS DEL CARMEN CASTRILLO FLORES, YAMIRELLYS SABBAGH, JESIKA NAVAS URRIBARRI, and JENNIFER RAMOS (collectively, "Plaintiffs"), pursuant to 29 U.S.C. §§ 201 - 219, and Art. X, Sec. 24 of the Florida Constitution, through the undersigned counsel, file this Complaint for Damages and Demand for Jury Trial against Defendants, SHOMA GROUP, LLC, d/b/a SHOMA BAZAAR ("Shoma Group"), SHOMA BAZAAR ONE, LLC ("Shoma Bazaar"), MASOUD SHOJAEE ("Masoud"), PAUL J. PRICE ("Price"), and STEPHANIE SHOJAEE ("Shojaee") (collectively "Defendants"), jointly and severally, and allege as follows:

**INTRODUCTION**

1.      Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Art. X, Sec. 24 of the Florida Constitution, to recover compensation and other relief.

2.      Defendants committed federal and state minimum wage violations because they improperly allowed Supervisors and Managers in the tipping pool and improperly kept Plaintiffs' tips.

3.      As a result, Plaintiffs were denied federal and state minimum wages and tips during various workweeks within the relevant time period.

4.      On May 29, 2024, Plaintiffs filed a class action lawsuit against Defendants for violations of the FLSA and FMWA in the Southern District of Florida, Case No. 1:24-cv-22055-RKA ("Class Action Lawsuit").

5.      In response to the Class Action Lawsuit, Defendants unlawfully retaliated against Plaintiffs in violation of the FLSA and FMWA.

6.      On May 20, 2025, a Notice of Settlement was filed for the Class Action Lawsuit.

7.      On May 22, 2025, this Court granted a joint motion to sever all retaliation claims from the Class Action Lawsuit. [ECF No. 3].

**PARTIES**

8.      During all times material hereto, Plaintiff ANTONIO CASTILLO was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

9.      During all times material hereto, Plaintiff RAUL CASTRILLO was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

10. During all times material hereto, Plaintiff MARGARELYS FLORES was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

11. During all times material hereto, Plaintiff HUSSEIN KARIM KARIM was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

12. During all times material hereto, Plaintiff LISABETH REVILLA was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

13. During all times material hereto, Plaintiff MARICELLYS DEL CARMEN CASTRILLO FLORES was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

14. During all times material hereto, Plaintiff YAMIRELLYS SABBAGH was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

15. During all times material hereto, Plaintiff JESIKA NAVAS URRIBARRI was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

16. During all times material hereto, Plaintiff JENNIFER RAMOS was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

17. Plaintiffs are non-exempt Front of the House employees who worked for Defendant at their food hall establishment, known as Shoma Bazaar, located at 9420 NW 41st St, Doral, FL 33178.

18. Plaintiffs are or were hired as bartenders, bussers, or barbacks at Defendant's Shoma Bazaar food hall within the last three years and were 'tipped' non-exempt employees, as defined under the FLSA.

19. Plaintiffs worked for Defendants as bartenders, bussers, or barbacks at Shoma Bazaar within the last three years,

20.     Upon information and belief, Defendants have records identifying the exact dates when they employed Plaintiffs as front-of-the-house tipped employees.

21.     During all times material hereto, Defendant SHOMA GROUP, LLC was a Florida limited liability company operating and transacting for-profit business within Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Upon information and belief, the Defendant Shoma Group was the Plaintiffs' "employer" as defined by the FLSA and FMWA for the Plaintiffs' respective period of employment ("relevant time period").

22.     Defendant Shoma Group, LLC, operates under the fictitious name of "Shoma Bazaar Food Hall," a food hall in Miami, Florida.

23.     During all times material hereto, Defendant SHOMA BAZAAR ONE, LLC was a Florida limited liability company operating and transacting for-profit business within Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Upon information and belief, Defendant Shoma Bazaar was the Plaintiffs' "employer" as defined by the FLSA and FMWA for the relevant time period.

24.     The individual Defendant, MASOUD SHOJAEE, is a corporate officer and/or owner and manager of the Defendant corporations, Shoma Group and Shoma Bazaar (collectively "Corporate Defendants" or "Defendant Corporations"), who ran the day-to-day operations of the Corporate Defendants for the relevant time period and/or was responsible for paying Plaintiffs their wages for the relevant time period and controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d).

25.     The individual Defendant, PAUL J. PRICE, is a corporate officer and/or owner and manager of the Defendant Corporations, who ran the day-to-day operations of the Corporate

Defendants for the relevant time period, controlled Plaintiffs' work and schedule, and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d)

26. The individual Defendant, STEPHANIE SHOJAEE, is a corporate officer and/or owner and manager of the Defendant Corporations, who ran the day-to-day operations of the Corporate Defendants for the relevant time period, controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d).

27. During all times material hereto, Defendants owned, operated, and controlled the Shoma Bazaar food hall located at 9420 NW 41st St, Doral, FL 33178.

28. Defendants were the Plaintiffs' "employer" as defined by the FLSA and FMWA during all times pertinent to the allegations herein.

29. During all times material hereto, Defendants were vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Shoma Bazaar food hall.

30. Defendants implement uniform pay, tip, and time-keeping practices at the Shoma Bazaar food hall that apply to all Front of the House employees.

## JURISDICTION AND VENUE

31. This Court has original jurisdiction over the Plaintiff's federal question claims pursuant to 28 U.S.C. §1331 and 26 U.S.C. §201, *et seq.*, and supplemental jurisdiction over the Plaintiffs' claims arising under Florida law pursuant to 28 U.S.C. §1367 and/or 28 U.S.C. §1343.

32. Defendants regularly transact business in Miami-Dade County, Florida, and jurisdiction is therefore proper.

33. The acts or omissions in this dispute occurred within Miami-Dade County, Florida.

34.     Venue in this Court is proper under 28 U.S.C. §1391(b)(ii) because Defendants transact business in this District, and because Plaintiffs worked in Miami-Dade County, were paid in Miami-Dade County, and were due to be paid the tips that they earned in Miami-Dade County.

35.     Plaintiffs fulfilled all conditions precedent required to bring their claims under the FMWA.

36.     More specifically, on January 10, 2024, Plaintiffs, through their counsel, served Defendant Shoma Group with a written pre-suit demand notice regarding their FMWA claims, requesting Defendant to pay them the minimum wages owed to them.

## FLSA COVERAGE

37.     Defendants Shoma Group and Shoma Bazaar are an enterprise covered by the FLSA because they are engaged in commerce and in the production of goods for commerce, in that Defendants have at least two or more employees engaged in commerce and in the production of goods for commerce, and two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

38.     During all time periods pertinent hereto, Defendant Corporations' employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, rice, beer, Corona Extra, Corona Light, vodka, Jack Daniels whiskey, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, zucchini, wings, mahi mahi, salmon, onions, peppers, crab, shrimp, beef, steak, potatoes, bread, hot sauce, BBQ sauce, cheese, buns, jalapenos, celery sticks, lobster broth, yellowfin tuna, plum tomatoes, cauliflower, avocados, taco shells, fajitas, salt, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, mints, flour, sugar, coffee, tea, soda, water bottles, and other materials that had previously traveled through interstate commerce.

39.     The Defendant Corporations each had annual gross revenues over $500,000.00 in 2022 and 2023 and are expected to gross in excess of $500,000.00 in 2024.

## FACTS

### *Hiring Process*

40.     Defendant Corporations hired Plaintiffs as bartenders, bussers, or barbacks at Defendant Corporations' establishment and were 'tipped' employees under the FLSA.

41.     The Defendant Corporations interviewed Plaintiffs and, on the same day, offered them a job as a bartender, busser, or barback.

42.     Plaintiffs' interviews did not last more than fifteen to twenty minutes.

43.     At that same interview, the hiring managers would tell Plaintiffs they were hired.

44.     The hiring managers would hurriedly present Plaintiffs with a set of documents and instructed Plaintiffs to sign if they wanted to accept the job offered.

45.      The documents the hiring managers hurriedly gave the Plaintiffs were an application package with an employment agreement ("Agreement").

46.     The Agreement is a three to four-page document with the job offer for the Plaintiffs detailing hourly pay, start date, and other essential details needed by human resources.

47.     Hidden within the Agreement in small English print are provisions where the applicant Plaintiffs are waiving their rights to a jury trial, their rights to bring forth a class action lawsuit, and agreeing to arbitration for any employment disputes.

48.     Hiring managers of the Defendant Corporations told Plaintiffs that if they did not sign the Agreement, they could not commence the job they were being offered.

49.     The hiring managers told the Plaintiffs this was a take-it-or-leave-it offer of employment, and the decision had to be made on the spot.

50.     The hiring manager did not explain to the Plaintiffs that they were signing an arbitration agreement, that they were waiving their right to a jury trial, or that they could not participate in a class action lawsuit if the Defendant Corporation violated their legal rights.

51.     The hiring managers did not allow Plaintiffs to review the Agreement.

52.     The applicant Plaintiffs were not given a copy of the Agreement nor allowed to take home the Agreement to review any of the forms before signing them.

53.     The applicant Plaintiffs were not given a copy of the arbitration agreement or the arbitration rules, nor were they allowed to have an attorney review the Agreement before signing.

54.     The Agreement contained no language suggesting that the applicant Plaintiffs have the Agreement reviewed by an attorney.

55.     None of the Plaintiffs recall executing the Agreement.

56.     Some of the Plaintiffs were not even given the Agreement until days after they started employment at Shoma Bazaar.

57.     The hiring managers would flip to the last page of the Agreement and tell the applicant Plaintiffs to sign so they can commence working.

58.     Many of the applicant Plaintiffs were immigrant workers who spoke or read little to no English and did not have knowledge of their legal rights as employees in the United States of America and under Florida law.

59.     Yet the hiring managers would coerce them to sign the English written Agreement because it was the only way the Plaintiffs could begin to work.

60.     The jobs the applicant Plaintiffs were applying for were paying between $8 to $12 per hour.

61.     Plaintiffs are lower-income individuals who applied for jobs at Shoma Bazaar and accepted the terms of the employment without knowledge because they were in dire financial need.

62.     Plaintiffs had neither the ability nor the incentive to comprehend the significance of executing an arbitration agreement, a waiver of trial by jury, or a waiver of bringing forth a class action against the Defendant Corporations.

63.     At all times, the Defendant Corporations knew that the applicant Plaintiffs were not adequately informed or had knowledge of the constitutional rights they were waiving by signing the Agreement.

64.     At all times, the Defendant Corporations knew or should have known that the majority of the applicant Plaintiffs were of a lower educational and income level, were in dire financial need, and for them obtaining a job in the Miami job market with an opportunity to earn tips and have total earnings slight above minimum wage was and is extremely difficult.

65.     Yet, the Defendant Corporations continued its malicious and coercive practices of having applicants waive their constitutional rights in return for employment, knowing that the Plaintiffs were at a disadvantage because they were in dire financial need and could not read English or understand the terms of the Agreement.

66.     At no point in time were the Plaintiffs allowed to revoke their consent to the Agreement.

67.     As such, Plaintiffs did not knowingly and voluntarily waive their constitutional rights to a jury trial, accept the arbitration agreement, or waive their rights to bring forth a class action lawsuit.

*Confiscation of Tips and Tip Credits*

68.     During the Plaintiffs' employment, Defendant Corporations claimed a 'tip-credit' for the Plaintiffs and the Putative Class members.

69.     Defendants paid these employees below the statutorily required minimum wage under the FLSA.

70.     For the Defendant Corporations to claim a 'tip-credit,' the Plaintiffs must be informed of the provisions of the 'tip-credit,' and all tips received by the Plaintiffs and the Putative Class members must be absolutely retained by Plaintiffs and pooled with only 'tipped' employees.

71.     However, the Defendant Corporations failed to comply with the 'tip-credit' requirements pursuant to the FLSA by including non-'tipped' employees, including but not limited to managers or supervisors who received a portion of the Plaintiffs' tips when they were not 'tipped' employees.

72.     The Defendant Corporations' failure to comply with the FLSA 'tip-credit' requirements results in their inability to claim a 'tip-credit' for the Plaintiffs.

73.     The Defendant Corporations, unable to claim a 'tip-credit,' are required to therefore compensate Plaintiffs with, at least, the required minimum wage.

74.     The Defendant Corporations willfully refused to properly compensate Plaintiffs for minimum wage in violation of the FLSA, as the aforementioned 'tip-credit' was claimed despite their failure to comply with the 'tip-credit' requirements under the FLSA.

75.     All records concerning the number of hours worked by Plaintiffs are in the Defendant Corporations' exclusive possession and sole custody and control. Therefore, the Plaintiffs cannot state the exact amount due at this time.

76. Plaintiffs, however, will exert their collective diligent efforts to obtain such information by appropriate discovery proceedings, which will be taken promptly in this case.

*Failure to Provide Notice of the Tip Credit to Plaintiffs*

77. Federal law and Florida law require Defendants to provide specific notice to Plaintiffs and other similarly situated bartenders, bussers, and barbacks prior to claiming a tip credit.

78. During the previous three years, Defendants did not provide Plaintiffs and other similarly situated servers and bartenders with notice that Defendants attempted to retain a tip credit.

79. Plaintiffs and the federal minimum wage collective members are entitled to recover at least federal minimum wage for hours worked for the past three years.

80. Plaintiffs and the Florida minimum wage class members are entitled to recover at least the Florida minimum wage for hours worked for the past three years.

81. Plaintiffs retained the undersigned counsel and agreed to pay a reasonable attorney's fee for all related services.

*Defendants' Unlawful Retaliatory Actions*

82. On or about January 16, 2024, Plaintiffs complained regarding their unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisors, owners, and executives by sending a letter demanding payment of their unlawful tip confiscations ("Demand Letter").

83. Shortly after sending the Demand Letter, Plaintiffs became a target of increasing hostility from Shoma management.

84. Plaintiffs were subjected to threats and intimidation, including but not limited to verbal comments made by Teddy Attelus ("Teddy"), a supervisor at Shoma, Defendant Price, and Defendant Masoud.

85. On or about January 22, 2024, after Defendants were on notice that Plaintiff Mr. Raul Castrillo was represented by the undersigned counsel, Shoma supervisor "Teddy," held a meeting with the staff at Shoma and told everyone that the meeting was held because of the upcoming Class Action Lawsuit and that they, the bartenders and bussers, were "fucking up."

86. On or about January 23, 2024, after Defendants were on notice that Mr. Castrillo was represented by the undersigned counsel, Defendant Price and Defendant Masoud called Mr. Castrillo to a meeting at Defendant Shoma's office (the "Meeting").

87. At the Meeting, Defendant Price told Mr. Castrillo he was called into the Meeting by Defendant Masoud and himself.

88. Defendant Price then placed a copy of the Demand Letter in front of Mr. Castrillo and demanded an explanation.

89. Mr. Castrillo responded that if there was an issue, Defendants should speak directly with his attorney.

90. During the Meeting, Mr. Castrillo was threatened and confronted, and the tone escalated when Defendant Massoud, owner of Shoma, entered the office.

91. Mr. Castrillo reiterated that he was a named plaintiff in the Class Action Lawsuit, that he believed the missing wages were part of the broader wage theft issues raised in the Demand Letter, and that they should only speak with his attorney regarding the issues related to the Demand Letter.

92.     In response, Defendant Massoud Shojaee minimized the issue, stating: "They are fighting because of $900?" and then offered: "If you want, we give you the $900 in the next paystub and stop the problem."

93.     Massoud continued: "I will resolve this fast. This is not a problem," and then issued a threatening directive in front of others, stating, "From here on out, I want everyone to do what needs to be done," signaling an effort to reassert control and silence complaints.

94.     Defendant Massoud then gave Price a direct message: "Make sure they are held accountable," referring to Mr. Castrillo and other plaintiffs mentioned in the Demand Letter.

95.     Shoma management, on the directions and instructions of Defendants Massoud, Price, and Shojaee, then began a series of actions aimed at eliminating the Plaintiffs and others who were considering joining the upcoming Class Action Lawsuit in retaliation for obtaining counsel and reporting the unlawful business practices of Defendants.

96.     Defendants, including its representatives, supervisors, and managers, began to reduce hours for some of the Plaintiffs involved in the upcoming Class Action Lawsuit.

97.     Defendants, including its representatives, supervisors, and managers, began to change policies and procedures aimed at restricting the freedom of the Plaintiffs in the upcoming Class Action Lawsuit.

98.     Defendants, including its representatives, supervisors, and managers, began to change their behavior, policies, and procedures aimed at creating a hostile work environment for the Plaintiffs in the upcoming Class Action Lawsuit with the desire of constructively discharging the Plaintiffs.

99. On or about January 29, 2024, Defendant Price went physically to Shoma and instructed supervisor or manager Sonia Escalante that he and Defendant Massoud did not want any of the bussers "talking to each other."

100. Shortly thereafter, some of the bussers at Shoma, as well as the Plaintiffs in the Class Action Lawsuit, were constructively discharged by the Defendants.

101. On or about March 13, 2024, Plaintiff Margarelys Flores once again complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Maria Gabriela Silva.

102. On or about March 14, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name).

103. On or about March 15, 2024, Ms. Flores met with Priscila once again to complain about her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name) ("March 15th Meeting").

104. At the March 15th Meeting, Priscila told Ms. Flores that Defendants Paul Price and Shoma were responsible for the unpaid tips.

105. Defendants continued not to pay Ms. Flores's tips correctly, and she continued to complain about the Defendants' unlawful practices to supervisors.

106. On or about April 29, 2024, Defendants, in another retaliatory adverse employment action, changed the title of all the bussers at Shoma to "supervisors" so that the bussers could no longer share in the tipping pool—another retaliatory act against Plaintiffs involved in the Class Action Lawsuit.

107. On or about April 29, 2024, Defendants, in a retaliatory act, terminated the employment of Plaintiffs Margarely Flores, Yamirellys Sabbagh, Jessica Navas, and Jennifer Ramos.

108. On or about May 6, 2024, Plaintiff Antonio Castillo complained to Shoma General Manager David (unknown last name) ("GM David") about Defendants' adverse employment actions made in retaliation for the Class Action Lawsuit related to unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations.

109. In conversation, GM David discovered that Mr. Castillo had made previous complaints and that he now had to seek legal representation to enforce his rights.

110. Through the conversation, GM David became aware that Mr. Castillo was the "leader" in having the bartenders and bussers join the upcoming Class Action Lawsuit against Defendants.

111. Mr. Castillo asked GM David to move on to another subject related to work and not the Class Action Lawsuit.

112. Shortly thereafter, on or about May 10, 2024, Plaintiff Castillo was not given any work hours for the upcoming week.

113. On May 13, 2024, Defendant terminated Plaintiff Mr. Castillo.

114. On or about May 29, 2024, Plaintiffs again complained and exercised their legal rights by filing the Class Action Lawsuit against Defendants, claiming unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations against Defendants.

115. On July 1, 2024, Plaintiffs amended their Complaint, adding more Plaintiffs and victims, eleven total, against Defendants unlawful practices ("Amended Complaint").

116. On November 4, 2024, the Parties in the lawsuit agreed to conduct an early mediation in a good faith attempt to resolve all issues.

117. The mediation was unsuccessful.

118. Shortly after the unsuccessful mediation, the Defendants were notified that more Plaintiffs came forward about the Defendants' unlawful practices and retained counsel to bring charges against Defendants.

119. Defendants escalated their retaliatory actions, constructively discharging more Plaintiffs.

120. For example, shortly after the mediation, Defendants:

   a. Reduced Plaintiff Hussein Karim's hours from thirty-seven hours per week to twenty-nine hours per week.

   b. On or about November 29, 2024, Defendants, in retaliatory action, reduced Plaintiffs, including but not limited to Maricellys Del Carmen Castrillo's work hours.

   c. In Ms. Castrillo's case, Defendants reduced her work hours from approximately forty-two hours per week to approximately twenty-nine hours per week.

   d. Scheduled Plaintiffs to work unfavorable work schedules that they had never worked before the filing of the Class Action Lawsuit, the sending of the Demand Letter, or the unsuccessful mediation.

121. Ms. Castrillo complained to Defendants shortly after the adverse employment action to no avail.

122. Shoma General Manager Omar then gave the instructions to all the Shoma supervisors, citing that the orders came from "ownership" not to swap hours with Ms. Castrillo, even if it meant that "Ms. Castrillo had to quit."

123. On or about December 14, 2025, Defendants constructively discharged Plaintiff Maricellys Del Carmen Castrillo.

124. On or about December 15, 2024, Defendants unlawfully and in retaliation terminated Plaintiffs Hussein Karim and Jessica Cobas.

125. On or about December 15, 2024, Shoma's General Manager Omar explained he was terminating the bussers because Defendant Masoud gave the order, and the employees, including supervisors, had no say in the firings.

126. On January 3, 2025, additional Plaintiffs and victims came forward, and therefore, a Second Amended Complaint was filed, bringing a total of twenty-four Plaintiffs.

127. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Plaintiffs of statutory rights under state law.

128. Based on information and belief, Plaintiffs allege that Defendants' actions were done with malice and with reckless disregard for their protected rights under the FMWA.

129. Defendants' alleged reasons for constructively discharging or terminating Plaintiffs are pretextual, as described above.

## COUNT I
## VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT
## RETALIATION AGAINST ANTONIO CASTILLO

130.    Plaintiff Antonio Castillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

131.    Plaintiff Antonio Castillo brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

132.    Defendants knew of Plaintiff Castillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Castillo made the complaints to Defendants' managers or supervisors.

133.    In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, Mr. Castillo's most recent Complaint was made to general manager David (unknown last name) ("GM David") on or about May 6, 2024.

134.    Mr. Castillo complained about Defendants' unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations.

135.    Mr. Castillo had previously complained to the former general manager about Defendants' unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws.

136.    In conversation, GM David discovered that Mr. Castillo had made previous complaints and that Mr. Castillo had to seek legal representation to enforce his rights.

137.    Through the conversation, GM David became aware that Mr. Castillo was the "leader" in having the bartenders and bussers join the Class Action Lawsuit against Defendants.

138.     Mr. Castillo asked GM David to move on to another subject related to work and not the Class Action Lawsuit.

139.     Shortly thereafter, on or about May 10, 2024, Plaintiff Castillo was not given any work hours for the upcoming week.

140.     On May 13, 2024, Defendant terminated Mr. Castillo.

141.     As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castillo of statutory rights under state law.

142.     Based on information and belief, Plaintiff alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FMWA.

143.     Defendants' alleged reasons for terminating Mr. Castillo are pretextual, as described above.

144.     Plaintiff Castillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Antonio Castillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT II**
**VIOLATION(S) OF THE FLSA**
**RETALIATION AGAINST ANTONIO CASTILLO**

145.     Plaintiff Antonio Castillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

146. Plaintiff Antonio Castillo brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for Defendant's retaliatory conduct.

147. Defendants knew of Plaintiff Castillo's complaints of unpaid tips, unlawful tip confiscation, and unpaid minimum wages under the FLSA, as Mr. Castillo complained to Defendants' managers or supervisors.

148. In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, Mr. Castillo's most recent Complaint was made to general manager David (unknown last name) ("GM David") on or about May 6, 2024.

149. Mr. Castillo complained about Defendants' unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations.

150. Mr. Castillo had previously complained to the former general manager about Defendants' unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws.

151. In conversation, GM David discovered that Mr. Castillo had made previous complaints and that he now had to seek legal representation to enforce his rights.

152. Through the conversation, GM David became aware that Mr. Castillo was the "leader" in having the bartenders and bussers join the current lawsuit against Defendants.

153. Mr. Castillo asked GM David to move on to another subject related to work and not the Class Action Lawsuit.

154. Shortly thereafter, on or about May 10, 2024, Plaintiff Castillo was not given any work hours for the upcoming week.

155. On May 13, 2024, Defendant terminated Mr. Castillo.

156. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castillo of statutory rights under state law.

157. Based on information and belief, Plaintiff alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FLSA.

158. Defendants' alleged reasons for terminating Mr. Castillo are pretextual, as described above.

159. Plaintiff Castillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Antonio Castillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff: (a) unliquidated damages; (b) front and back pay; (c) liquidated damages; (d) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT III**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST MARGARELYS FLORES**

160. Plaintiff Margarelys Flores hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

161. Plaintiff Margarelys Flores brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

162. Defendants knew of Plaintiff Flores's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Flores made the complaints to Defendants' managers or supervisors.

163.     In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, on or about March 13, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Maria Gabriela Silva.

164.     On or about March 14, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name).

165.     On or about March 15, 2024, Ms. Flores met with Priscila once again to complain about her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name) ("March 15th Meeting").

166.     At the March 15th Meeting, Priscila told Ms. Flores that Defendants Paul Price and Shoma were responsible for the unpaid tips.

167.     Defendants continued not to pay Ms. Flores's tips correctly, and she continued to complain about the Defendants' unlawful practices to supervisors.

168.     On April 29, 2024, Defendants terminated Ms. Flores.

169.     As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Flores of statutory rights under state law.

170.     Based on information and belief, Plaintiff Flores alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FMWA.

171.     Defendants' alleged reasons for terminating Ms. Flores are pretextual, as described above.

172. Plaintiff Flores seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Margarelys Flores respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Flores: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT IV**
**VIOLATION(S) OF THE FLSA**
**RETALIATION AGAINST MARGARELYS FLORES**

173. Plaintiff Margarelys Flores hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

174. Plaintiff Margarelys Flores brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for Defendant's retaliatory conduct.

175. Defendants knew of Plaintiff Flores's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Flores made the complaints to Defendants' managers or supervisors.

176. In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, on or about March 13, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Maria Gabriela Silva.

177. On or about March 14, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name).

178.    On or about March 15, 2024, Ms. Flores met with Priscila once again to complain about her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name) ("March 15th Meeting").

179.    At the March 15th Meeting, Priscila told Ms. Flores that Defendants Paul Price and Shoma were responsible for the unpaid tips.

180.    Defendants continued not to pay Ms. Flores's tips correctly, and she continued to complain about the Defendants' unlawful practices to supervisors.

181.    On April 29, 2024, Defendants terminated Ms. Flores.

182.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Flores of statutory rights under federal law.

183.    Based on information and belief, Plaintiff Flores alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

184.    Defendants' alleged reasons for terminating Ms. Flores are pretextual, as described above.

185.    Plaintiff Flores seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Margarelys Flores respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Flores: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT V
## VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT
## RETALIATION AGAINST RAUL CASTRILLO

186. Plaintiff Raul Castrillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

187. Plaintiff Raul Castrillo brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

188. Defendants knew of Plaintiff Castrillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Castrillo made the complaints to Defendants' managers or supervisors.

189. In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, on or about January 16, 2024, Mr. Castrillo complained regarding his unpaid tips, unlawful tip confiscation and federal and state minimum wage law violations to Shoma supervisors, owners, and executives by sending a letter demanding payment of his unlawful tip confiscations ("Demand Letter").

190. Shortly after sending the Demand Letter, Mr. Castrillo became a target of increasing hostility from Shoma management.

191. Mr. Castrillo was subjected to threats and intimidation, including but not limited to verbal comments made by Teddy Attelus ("Teddy"), a supervisor at Shoma, Defendant Price, and Defendant Masoud.

192. On or about January 22, 2024, after Defendants were on notice that Mr. Castrillo was represented by the undersigned counsel, Shoma supervisor "Teddy," held a meeting with the staff at Shoma and told everyone that the meeting was held because of the Class Action Lawsuit and that they, the bartenders and bussers, were "fucking up."

193.    On or about January 23, 2024, after Defendants were on notice that Mr. Castrillo was represented by the undersigned counsel, Defendant Price and Defendant Masoud called Mr. Castrillo to a meeting at Defendant Shoma's office (the "Meeting").

194.    At the Meeting, Defendant Price told Mr. Castrillo he was called into the Meeting by Defendant Masoud and himself.

195.    Defendant Price then placed a copy of the Demand Letter in front of Mr. Castrillo and demanded an explanation.

196.    Mr. Castrillo responded that if there was an issue, Defendants should speak directly with his attorney.

197.    During the Meeting, Mr. Castrillo was threatened and confronted, and the tone escalated when Defendant Massoud, owner of Shoma, entered the office.

198.    Mr. Castrillo reiterated that he was a named plaintiff in the Class Action Lawsuit, that he believed the missing wages were part of the broader wage theft issues raised in the Demand Letter, and that they should only speak with his attorney regarding the issues related to the Demand Letter.

199.    In response, Defendant Massoud Shojaee minimized the issue, stating: "They are fighting because of $900?" and then offered: "If you want, we give you the $900 in the next paystub and stop the problem."

200.    Massoud continued: "I will resolve this fast. This is not a problem," and then issued a threatening directive in front of others, stating, "From here on out, I want everyone to do what needs to be done," signaling an effort to reassert control and silence complaints.

201.    Defendant Massoud then gave Price a direct message: "Make sure they are held accountable," referring to Mr. Castrillo and other plaintiffs mentioned in the Demand Letter.

202. Shoma management, on the directions and instructions of Defendants Massoud, Price, and Shojaee, then began a series of actions aimed at eliminating the Plaintiffs and others who were considering joining the upcoming Class Action Lawsuit in retaliation for obtaining counsel and reporting the unlawful business practices of Defendants.

203. On or about May 29, 2024, Mr. Castrillo complained regarding his unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisors, owners, and executives by filing a Class Action Lawsuit against his employer and officers.

204. On July 1, 2024, Plaintiffs amended the Class Action Lawsuit, adding more Plaintiffs and victims, eleven total, against Defendants unlawful practices ("Amended Complaint").

205. On November 4, 2024, the Parties in the lawsuit agreed to conduct an early mediation in a good faith attempt to resolve all issues.

206. The mediation was unsuccessful.

207. Shortly after the unsuccessful mediation, the Defendants were notified that more Plaintiffs came forward about the Defendants' unlawful practices and retained counsel to bring charges against Defendants.

208. Defendants escalated their retaliatory actions, firing more Plaintiffs or forcing them to quit (constructive discharge).

209. On January 3, 2025, additional Plaintiffs and victims came forward, and therefore, a Second Amended Complaint was filed in the Class Action Lawsuit, bringing a total of twenty-four Plaintiffs.

210.    On or about March 25, 2025, Plaintiff Raul Castrillo attended a mandatory morning bar staff meeting at Shoma Bazaar at approximately 9:00 a.m., led by the new bar manager, Manny, and the prior bar manager, Teddy.

211.    During this meeting, management provided operational updates, discussed revised standards, and emphasized the need for additional staff due to being short-handed during several shifts.

212.    Following the meeting, and with the Shoma managers' consent and knowledge, Mr. Castrillo remained at the premises to assist with a deep cleaning of the bar and departed around noon.

213.    Mr. Castrillo returned to Shoma Bazaar at 3:50 p.m., as scheduled, to begin his 4:00 p.m. shift.

214.    Upon arriving and after working for approximately 30 minutes, he was summoned around 4:30 p.m. to a meeting with General Manager Omar and Human Resources Manager Priscila.

215.    During this meeting, Priscila informed Plaintiff Castrillo that, pursuant to an administrative decision by Shoma's owners, Defendants were implementing certain changes that included his immediate termination.

216.    When Mr. Castrillo requested the reason for his termination, he was told that it was simply due to a "reduction in personnel."

217.    Mr. Castrillo immediately objected to the explanation, noting that earlier that same day, management had expressly acknowledged the lack of sufficient staff and the need to hire more bartenders—not reduce them.

218. Mr. Castrillo questioned how a layoff could be justified when staffing needs had just been discussed.

219. Mr. Castrillo's termination occurred despite the restaurant anticipating high customer volume that evening due to the live broadcast of a high-profile soccer match involving the Venezuelan and Colombian national soccer teams—events that historically generated large crowds at Shoma.

220. In similar events, the Shoma bar would staff at least 2–3 bartenders.

221. Yet, Mr. Castrillo's termination resulted in only one bartender being scheduled, further evidence of the pretextual reason for termination and undermining the credibility of the stated reason for "personnel reduction."

222. The timing, lack of legitimate justification, and circumstances of Mr. Castrillo's termination—occurring shortly after his wage complaint and continued involvement in the Class Action Lawsuit—demonstrate a clear and direct retaliatory motive on the part of Defendants in violation of the FLSA and FMWA.

223. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castrillo of statutory rights under state law.

224. Based on information and belief, Plaintiff Mr. Castrillo alleges that Defendants' actions were done with malice and with reckless disregard for his protected rights under the FMWA.

225. Defendants' alleged reasons for terminating Mr. Castrillo are pretextual, as described above.

226.     Plaintiff Mr. Castrillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Raul Castrillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Mr. Castrillo: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

### COUNT VI
### <u>VIOLATION(S) OF THE FLSA</u>
### <u>RETALIATION AGAINST RAUL CASTRILLO</u>

227.     Plaintiff Raul Castrillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

228.     Plaintiff Raul Castrillo brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

229.      Defendants knew of Plaintiff Castrillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Castrillo made the complaints to Defendants' managers or supervisors.

230.     In addition to the Demand Letter and the Class Action Lawsuit, as explained in the previous paragraphs of this Third Amended Complaint, on or about January 16, 2024, Mr. Castrillo complained regarding his unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisors, owners, and executives by sending a letter demanding payment of his unlawful tip confiscations ("Demand Letter").

231.     Shortly after sending the Demand Letter, Mr. Castrillo became a target of increasing hostility from Shoma management.

232.    Mr. Castrillo was subjected to threats and intimidation, including but not limited to verbal comments made by Teddy Attelus ("Teddy"), a supervisor at Shoma, Defendant Price, and Defendant Masoud.

233.    On or about January 22, 2024, after Defendants were on notice that Mr. Castrillo was represented by the undersigned counsel, Shoma supervisor "Teddy," held a meeting with the staff at Shoma and told everyone that the meeting was held because of the Class Action Lawsuit and that they, the bartenders and bussers, were "fucking up."

234.    On or about January 23, 2024, after Defendants were on notice that Mr. Castrillo was represented by the undersigned counsel, Defendant Price, and Masoud called Mr. Castrillo to a meeting at Defendant Shoma's office (the "Meeting").

235.    At the Meeting, Defendant Price told Mr. Castrillo he was called into the Meeting by Masoud and himself.

236.    Defendant Price then placed a copy of the Demand Letter in front of Mr. Castrillo and demanded an explanation.

237.    Mr. Castrillo responded that if there was an issue, Defendants should speak directly with his attorney.

238.    During the Meeting, Mr. Castrillo was threatened and confronted, and the tone escalated when Defendant Massoud, owner of Shoma, entered the office.

239.    Mr. Castrillo reiterated that he was a named plaintiff in the Class Action Lawsuit, that he believed the missing wages were part of the broader wage theft issues raised in the Demand Letter, and that they should only speak with his attorney regarding the issues related to the Demand Letter.

240.    In response, Defendant Massoud Shojaee minimized the issue, stating: "They are fighting because of $900?" and then offered: "If you want, we give you the $900 in the next paystub and stop the problem."

241.    Massoud continued: "I will resolve this fast. This is not a problem," and then issued a threatening directive in front of others, stating, "From here on out, I want everyone to do what needs to be done," signaling an effort to reassert control and silence complaints.

242.    Defendant Massoud then gave Price a direct message: "Make sure they are held accountable," referring to Mr. Castrillo and other plaintiffs mentioned in the Demand Letter.

243.    Shoma management, on the directions and instructions of Defendants Massoud, Price, and Shojaee, then began a series of actions aimed at eliminating the plaintiffs and others who were considering joining the upcoming Class Action Lawsuit in retaliation for obtaining counsel and reporting the unlawful business practices of Defendants.

244.    In addition to the Demand Letter and the Class Action Lawsuit filed, as explained in the previous paragraphs of this Third Amended Complaint, on or about May 29, 2024, Mr. Castrillo complained regarding his unpaid tips, unlawful tip confiscation and federal and state minimum wage law violations to Shoma supervisors, owners, and executives by filing the Class Action Lawsuit against his employer and officers.

245.    On July 1, 2024, Plaintiffs amended their Class Action Lawsuit, adding more Plaintiffs and victims, eleven total, against Defendants unlawful practices ("Amended Complaint").

246.    On November 4, 2024, the Parties in the Class Action Lawsuit agreed to conduct an early mediation in a good faith attempt to resolve all issues.

247.    The mediation was unsuccessful.

248.	Shortly after the unsuccessful mediation, the Defendants were notified that more Plaintiffs came forward about the Defendants' unlawful practices and retained counsel to bring charges against Defendants.

249.	Defendants escalated their retaliatory actions, firing more Plaintiffs or forcing them to quit (constructive discharge).

250.	On January 3, 2025, additional Plaintiffs and victims came forward, and therefore, a Second Amended Complaint was filed in the Class Action Lawsuit, bringing a total of twenty-four Plaintiffs.

251.	On or about March 25, 2025, Plaintiff Raul Castrillo attended a mandatory morning bar staff meeting at Shoma Bazaar at approximately 9:00 a.m., led by the new bar manager, Manny, and the prior bar manager, Teddy.

252.	During this meeting, management provided operational updates, discussed revised standards, and emphasized the need for additional staff due to being short-handed during several shifts.

253.	Following the meeting, and with the Shoma managers' consent and knowledge, Mr. Castrillo remained at the premises to assist with a deep cleaning of the bar and departed around noon.

254.	Mr. Castrillo returned to Shoma Bazaar at 3:50 p.m., as scheduled, to begin his 4:00 p.m. shift.

255.	Upon arriving and after working for approximately 30 minutes, he was summoned around 4:30 p.m. to a meeting with General Manager Omar and Human Resources Manager Priscila.

256.     During this meeting, Priscila informed Plaintiff Castrillo that, pursuant to an administrative decision by Shoma's owners, Defendants were implementing certain changes that included his immediate termination.

257.     When Mr. Castrillo requested the reason for his termination, he was told that it was simply due to a "reduction in personnel."

258.     Mr. Castrillo immediately objected to the explanation, noting that earlier that same day, management had expressly acknowledged the lack of sufficient staff and the need to hire more bartenders—not reduce them.

259.     Mr. Castrillo questioned how a layoff could be justified when staffing needs had just been discussed.

260.     Mr. Castrillo's termination occurred despite the restaurant anticipating high customer volume that evening due to the live broadcast of a high-profile soccer match involving the Venezuelan and Colombian national soccer teams—events that historically generated large crowds at Shoma.

261.     In similar events, the Shoma bar would staff at least 2–3 bartenders.

262.     Yet, Mr. Castrillo's termination resulted in only one bartender being scheduled, further evidence of the pretextual reason for termination and undermining the credibility of the stated reason for "personnel reduction."

263.     The timing, lack of legitimate justification, and circumstances of Mr. Castrillo's termination—occurring shortly after his wage complaint and continued involvement in the Class Action Lawsuit—demonstrate a clear and direct retaliatory motive on the part of Defendants in violation of the FLSA and FMWA.

264. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castrillo of statutory rights under federal law.

265. Based on information and belief, Plaintiff Mr. Castrillo alleges that Defendants' actions were done with malice and with reckless disregard for his protected rights under the FLSA.

266. Defendants' alleged reasons for terminating Mr. Castrillo are pretextual, as described above.

267. Plaintiff Mr. Castrillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Raul Castrillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Castrillo: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT VII**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST MARICELLYS DEL CARMEN CASTRILLO**

268. Plaintiff Maricellys Del Carmen Castrillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

269. Plaintiff Maricellys Del Carmen Castrillo brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

270. Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

271. Defendants knew of Plaintiff Ms. Castrillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Castrillo made the complaints to Defendants' managers or supervisors.

272. After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff, including GM Omar Khawaja and Maria Gabriela Silva, subjected Plaintiff to escalating adverse employment actions, including but not limited to:

a. Unjustified reduction of her hours from approximately 42 hours per week to as few as 24 hours.

b. She was reassigned to undesirable and inconsistent shifts, specifically Sunday night shifts, for which she had never worked before and had expressly requested not to work due to preexisting commitments.

c. Disparate treatment in scheduling, as similarly situated employees who were not named plaintiffs in the Class Action Lawsuit continued to receive full shifts and scheduling accommodations.

d. Prohibition on shift swaps, which was conveyed by management to other staff, aimed at forcing Plaintiff to resign.

e. The issuance of a false disciplinary warning on or about November 29, 2024, based on an unfounded accusation from a busser, which management refused to investigate despite Plaintiff's repeated requests to review surveillance footage.

273. On or about December 5, 2024, Plaintiff Ms. Castrillo emailed Defendants' managers and supervisors formally raising internal concerns about the inequitable treatment, the shift changes, and what she perceived as retaliatory conduct directed against her due to her role in the Class Action Lawsuit.

274. As a result of these escalating adverse actions and the hostile working environment, Plaintiff Ms. Castrillo was constructively discharged on or about December 14, 2024, as no reasonable employee in her position would have continued employment under such conditions.

275. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FMWA, which violated Ms. Castrillo's statutory rights.

276. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Castrillo of statutory rights under state law.

277. Based on information and belief, Plaintiff Castrillo alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FMWA.

278. Defendants' alleged reasons for disciplining Ms. Castrillo are pretextual, as described above.

279. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

280. Plaintiff Ms. Castrillo seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Maricellys Del Carmen Castrillo respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Castrillo: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT VIII
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST MARICELLYS DEL CARMEN CASTRILLO

281.     Plaintiff Maricellys Del Carmen Castrillo hereby re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

282.     Plaintiff Maricellys Del Carmen Castrillo brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

283.     Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

284.     Defendants knew of Plaintiff Ms. Castrillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Castrillo made the complaints to Defendants' managers or supervisors.

285.     After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff, including GM Omar Khawaja and Maria Gabriela Silva, subjected Plaintiff to escalating adverse employment actions, including but not limited to:

   a. Unjustified reduction of her hours from approximately 42 hours per week to as few as 24 hours.

   b. She was reassigned to undesirable and inconsistent shifts, specifically Sunday night shifts, for which she had never worked before and had expressly requested not to work due to preexisting commitments.

   c. Disparate treatment in scheduling, as similarly situated employees who were not named plaintiffs in the Class Action Lawsuit continued to receive full shifts and scheduling accommodations.

d. Prohibition on shift swaps, which was conveyed by management to other staff, aimed at forcing Plaintiff to resign.

e. The issuance of a false disciplinary warning on or about November 29, 2024, based on an unfounded accusation from a busser, which management refused to investigate despite Plaintiff's repeated requests to review surveillance footage.

286. On or about December 5, 2024, Plaintiff Ms. Castrillo emailed Defendants' managers and supervisors formally raising internal concerns about the inequitable treatment, the shift changes, and what she perceived as retaliatory conduct directed against her due to her role in the Class Action Lawsuit.

287. As a result of these escalating adverse actions and the hostile working environment, Plaintiff Ms. Castrillo was constructively discharged on or about December 14, 2024, as no reasonable employee in her position would have continued employment under such conditions.

288. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Ms. Castrillo's statutory rights.

289. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Castrillo of statutory rights under federal law.

290. Based on information and belief, Plaintiff Castrillo alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

291. Defendants' alleged reasons for disciplining Ms. Castrillo are pretextual, as described above.

292.    As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

293.    Plaintiff Ms. Castrillo seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Maricellys Del Carmen Castrillo respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Castrillo: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT IX**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST YAMIRELLYS SABBAGH**

294.    Plaintiff Yamirellys Sabbagh re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

295.    Plaintiff Yamirellys Sabbagh brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

296.    Plaintiff Yamirellys Sabbagh engaged in protected activity under the FMWA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

297.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

298.    Defendants knew of Plaintiff Ms. Sabbagh's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Sabbagh made the complaints to Defendants' managers or supervisors.

299.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Sabbagh.

300.    This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Sabbagh.

301.    On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers — including Plaintiff Sabbagh — to "supervisors" in an effort to exclude them from participating in the tip pool.

302.    This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

303.    On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Sabbagh was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

304.    Defendants offered no legitimate explanation for the terminations.

305.    The temporal proximity between the January 16, 2024, demand letter and Plaintiff Sabbagh's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

306.    This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under Florida law.

307. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

308. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FMWA, which violated Ms. Castrillo's statutory rights.

309. Defendants' conduct was willful, malicious, and taken in bad faith in violation of Florida law.

310. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Sabbagh of statutory rights under state law.

311. Based on information and belief, Plaintiff Sabbagh alleges that Defendants' actions were done with malice and with reckless disregard for her protected rights under the FMWA.

312. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

313. Plaintiff Ms. Sabbagh seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Yamirellys Sabbagh respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Sabbagh: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT X
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST YAMIRELLYS SABBAGH

314.    Plaintiff Yamirellys Sabbagh re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

315.    Plaintiff Yamirellys Sabbagh brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

316.    Plaintiff Yamirellys Sabbagh engaged in protected activity under the FLSA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

317.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

318.    Defendants knew of Plaintiff Ms. Sabbagh's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Sabbagh made the complaints to Defendants' managers or supervisors.

319.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Sabbagh.

320.    This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Sabbagh.

321.    On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers — including Plaintiff Sabbagh — to "supervisors" in an effort to exclude them from participating in the tip pool.

322. This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

323. On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Sabbagh was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

324. Defendants offered no legitimate explanation for the terminations.

325. The temporal proximity between the January 16, 2024, demand letter and Plaintiff Sabbagh's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

326. This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under federal law.

327. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

328. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Ms. Sabbagh's statutory rights.

329. Defendants' conduct was willful, malicious, and taken in bad faith in violation of federal law.

330.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Sabbagh of statutory rights under federal law.

331.    Based on information and belief, Plaintiff Sabbagh alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

332.    As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

333.    Plaintiff Ms. Sabbagh seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Yamirellys Sabbagh respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Sabbagh: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT XI
### VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT
### RETALIATION AGAINST LISABETH REVILLA

334.    Plaintiff Lisabeth Revilla re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

335.    Plaintiff Lisabeth Revilla brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

336.    Plaintiff Lisabeth Revilla engaged in protected activity under the FMWA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

337. Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

338. Defendants knew of Plaintiff Ms. Revilla's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Revilla made the complaints to Defendants' managers or supervisors.

339. After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Revilla.

340. This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Revilla.

341. On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Revilla— to "supervisors" in an effort to exclude them from participating in the tip pool.

342. This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

343. On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Revilla was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

344. Defendants offered no legitimate explanation for the terminations.

345. The temporal proximity between the January 16, 2024, demand letter and Plaintiff Sabbagh's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

346.    This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under Florida law.

347.    The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

348.    Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FMWA, which violated Ms. Revilla's statutory rights.

349.    Defendants' conduct was willful, malicious, and taken in bad faith in violation of Florida law.

350.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Revilla of statutory rights under state law.

351.    Based on information and belief, Plaintiff Revilla alleges that Defendants' actions were done with malice and with reckless disregard for her protected rights under the FMWA.

352.    As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

353.    Plaintiff Ms. Revilla seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Lisabeth Revilla respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Revilla: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law,

and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT XII
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST LISABETH REVILLA

354.    Plaintiff Lisabeth Revilla re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

355.    Plaintiff Lisabeth Revilla brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

356.    Plaintiff Lisabeth Revilla engaged in protected activity under the FLSA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

357.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

358.    Defendants knew of Plaintiff Ms. Revilla's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Revilla made the complaints to Defendants' managers or supervisors.

359.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Revilla.

360.    This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Revilla.

361.    On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Revilla— to "supervisors" in an effort to exclude them from participating in the tip pool.

362.     This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

363.     On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Revilla was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

364.     Defendants offered no legitimate explanation for the terminations.

365.     The temporal proximity between the January 16, 2024, demand letter and Plaintiff Revilla's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

366.     This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under federal law.

367.     The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

368.     Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Ms. Revilla's statutory rights.

369.     Defendants' conduct was willful, malicious, and taken in bad faith in violation of federal law.

370.     As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Revilla of statutory rights under federal law.

371.     Based on information and belief, Plaintiff Revilla alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

372.     As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

373.     Plaintiff Ms. Revilla seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Lisabeth Revilla respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Revilla: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT XIII**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST JESIKA NAVAS URRIBARRI**

374.     Plaintiff Jesika Navas Urribarri re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

375.     Plaintiff Jesika Navas Urribarri brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

376.     Plaintiff Jesika Navas Urribarri engaged in protected activity under the FMWA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

377.     Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

378.     Defendants knew of Plaintiff Ms. Navas's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Navas made the complaints to Defendants' managers or supervisors.

379.     After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Navas.

380.     This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Navas.

381.     On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Navas— to "supervisors" in an effort to exclude them from participating in the tip pool.

382.     This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

383.     On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Navas was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

384.     Defendants offered no legitimate explanation for the terminations.

385.     The temporal proximity between the January 16, 2024, demand letter and Plaintiff Sabbagh's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

386. This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under Florida law.

387. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

388. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FMWA, which violated Ms. Navas's statutory rights.

389. Defendants' conduct was willful, malicious, and taken in bad faith in violation of Florida law.

390. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Navas of statutory rights under state law.

391. Based on information and belief, Plaintiff Navas alleges that Defendants' actions were done with malice and with reckless disregard for her protected rights under the FMWA.

392. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

393. Plaintiff Ms. Navas seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Jesika Navas Urribarri respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Navas: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs

permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT XIV
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST JESIKA NAVAS URRIBARRI

394.    Plaintiff Jesika Navas Urribarri re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

395.    Plaintiff Jesika Navas Urribarri brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

396.    Plaintiff Jesika Navas Urribarri engaged in protected activity under the FLSA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

397.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

398.    Defendants knew of Plaintiff Ms. Navas's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Navas made the complaints to Defendants' managers or supervisors.

399.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Navas.

400.    This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Navas.

401.    On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Navas— to "supervisors" in an effort to exclude them from participating in the tip pool.

402. This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

403. On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Navas was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

404. Defendants offered no legitimate explanation for the terminations.

405. The temporal proximity between the January 16, 2024, demand letter and Plaintiff Navas's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

406. This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under federal law.

407. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

408. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Ms. Navas's statutory rights.

409. Defendants' conduct was willful, malicious, and taken in bad faith in violation of federal law.

410. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Navas of statutory rights under federal law.

411. Based on information and belief, Plaintiff Navas alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

412. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

413. Plaintiff Ms. Navas seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Jesika Navas Urribarri respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Navas: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT XV**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST JENNIFER RAMOS**

414. Plaintiff Jennifer Ramos re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

415. Plaintiff Jennifer Ramos brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

416. Plaintiff Jennifer Ramos engaged in protected activity under the FMWA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

417.   Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

418.   Defendants knew of Plaintiff Ms. Ramos's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Ramos made the complaints to Defendants' managers or supervisors.

419.   After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Ramos.

420.   This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Ramos.

421.   On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Ramos— to "supervisors" in an effort to exclude them from participating in the tip pool.

422.   This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

423.   On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Ramos was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

424.   Defendants offered no legitimate explanation for the terminations.

425.   The temporal proximity between the January 16, 2024, demand letter and Plaintiff Sabbagh's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

426. This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under Florida law.

427. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

428. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FMWA, which violated Ms. Ramos's statutory rights.

429. Defendants' conduct was willful, malicious, and taken in bad faith in violation of Florida law.

430. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Ramos of statutory rights under state law.

431. Based on information and belief, Plaintiff Ramos alleges that Defendants' actions were done with malice and with reckless disregard for her protected rights under the FMWA.

432. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

433. Plaintiff Ms. Ramos seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Jennifer Ramos respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Ramos: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law,

and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT XVI
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST JENNIFER RAMOS

434.    Plaintiff Jennifer Ramos re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

435.    Plaintiff Jennifer Ramos brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

436.    Plaintiff Jennifer Ramos engaged in protected activity under the FLSA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

437.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

438.    Defendants knew of Plaintiff Ms. Ramos's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Ramos made the complaints to Defendants' managers or supervisors.

439.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Ms. Ramos.

440.    This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Ramos.

441.    On or about April 29, 2024, Defendants, in a sweeping adverse employment action, changed the job titles of all bussers —including Plaintiff Ramos— to "supervisors" in an effort to exclude them from participating in the tip pool.

442. This action had the effect of reducing their income and stripping them of their rightful share of tips, which was done in retaliation for their wage complaints and participation in the Class Action Lawsuit.

443. On that same day, and in close temporal proximity to her participation in the protected activity, Plaintiff Ramos was terminated by Defendants, along with three other Plaintiffs who had also engaged in protected activity.

444. Defendants offered no legitimate explanation for the terminations.

445. The temporal proximity between the January 16, 2024, demand letter and Plaintiff Ramos's termination on April 29, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between her protected activity and the adverse employment action.

446. This termination occurred shortly after the exercise of her legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under federal law.

447. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

448. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Ms. Ramos's statutory rights.

449. Defendants' conduct was willful, malicious, and taken in bad faith in violation of federal law.

450.     As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Ramos of statutory rights under federal law.

451.     Based on information and belief, Plaintiff Ramos alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

452.     As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

453.     Plaintiff Ms. Ramos seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Jennifer Ramos respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award Plaintiff Ramos: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT XVII**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST HUSSEIN KARIM KARIM**

454.     Plaintiff Hussein Karim Karim re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

455.     Plaintiff Hussein Karim Karim brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

456.     Plaintiff Hussein Karim Karim engaged in protected activity under the FMWA by participating in the collective demand letter dated January 16, 2024, and asserting her right to recover unpaid wages and tips.

457.     Plaintiff participated in the Class Action Lawsuit asserting claims under the FMWA and, by doing so, engaged in protected activity under the FMWA.

458.     Defendants knew of Plaintiff Mr. Karim's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Karim made the complaints to Defendants' managers or supervisors.

459.     After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Mr. Karim.

460.     This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Karim.

461.     Plaintiff Karim was employed by Defendants as a busser at Shoma Bazaar and worked consistently for 36 to 37 hours per week prior to joining the Class Action Lawsuit.

462.     Plaintiff Karim's scheduled work hours were reduced from an average of 36–37 hours per week to approximately 29–30 hours, significantly reducing his income and altering the terms of his employment.

463.     This reduction in hours occurred shortly after he participated in the Class Action Lawsuit and shortly after Defendants became aware of his formal involvement, indicating a direct retaliatory response.

464.     On or about December 15, 2024, and in close temporal proximity to his participation in the protected activity, Plaintiff Karim was terminated by Defendants.

465.     Defendants offered no legitimate explanation for the terminations.

466.     Shoma's General Manager, Omar, stated that the terminations were carried out by direct order from Defendant Masoud and that supervisors had no say in the decision—further demonstrating that the adverse action came from top-level management and was coordinated.

467.    The temporal proximity between the January 16, 2024, demand letter, the filed Class Action Lawsuit, the reduction in hours, and Plaintiff Karim's termination on December 15, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between his protected activity and the adverse employment action.

468.    This termination occurred shortly after the exercise of his legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under Florida law.

469.    The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

470.    Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of his rights under the FMWA, which violated Mr. Karim's statutory rights.

471.    Defendants' conduct was willful, malicious, and taken in bad faith in violation of Florida law.

472.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Karim of statutory rights under Florida law.

473.    Based on information and belief, Plaintiff Karim alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FMWA.

474.    As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

475.    Plaintiff Mr. Karim seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Hussein Karim Karim respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Karim: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT XVIII**
**VIOLATION(S) OF THE FLSA**
**RETALIATION AGAINST HUSSEIN KARIM KARIM**

476.    Plaintiff Hussein Karim Karim re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

477.    Plaintiff Hussein Karim Karim brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for the Defendant's retaliatory conduct.

478.    Plaintiff Hussein Karim Karim engaged in protected activity under the FLSA by participating in the collective demand letter dated January 16, 2024, and asserting his right to recover unpaid wages and tips.

479.    Plaintiff participated in the Class Action Lawsuit asserting claims under the FLSA and, by doing so, engaged in protected activity under the FLSA.

480.    Defendants knew of Plaintiff Mr. Karim's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Karim made the complaints to Defendants' managers or supervisors.

481.    After becoming a named plaintiff in the Class Action Lawsuit, Defendants and their managerial staff began a campaign of retaliation against Plaintiffs, including Mr. Karim.

482. This included heightened scrutiny, scheduling manipulation, policy changes, and the eventual termination of several Plaintiffs, including Plaintiff Karim.

483. Plaintiff Karim was employed by Defendants as a busser at Shoma Bazaar and worked consistently for 36 to 37 hours per week prior to joining the Class Action Lawsuit.

484. Plaintiff Karim's scheduled work hours were reduced from an average of 36–37 hours per week to approximately 29–30 hours, significantly reducing his income and altering the terms of his employment.

485. This reduction in hours occurred shortly after he participated in the Class Action Lawsuit and shortly after Defendants became aware of his formal involvement, indicating a direct retaliatory response.

486. On or about December 15, 2024, and in close temporal proximity to his participation in the protected activity, Plaintiff Karim was terminated by Defendants.

487. Defendants offered no legitimate explanation for the terminations.

488. Shoma's General Manager, Omar, stated that the terminations were carried out by direct order from Defendant Masoud and that supervisors had no say in the decision—further demonstrating that the adverse action came from top-level management and was coordinated.

489. The temporal proximity between the January 16, 2024, demand letter, the filed Class Action Lawsuit, the reduction in hours, and Plaintiff Karim's termination on December 15, 2024, combined with the pattern of escalating retaliation described above, demonstrates a clear causal connection between his protected activity and the adverse employment action.

490. This termination occurred shortly after the exercise of his legal rights and was part of a pattern of retaliation directed at those participating in the Class Action Lawsuit and asserting statutory rights under federal law.

491. The reason given for Plaintiff's termination —if any—was pretextual and not supported by business necessity, as the Defendants continued to hire new employees during this time and had not presented legitimate documentation or progressive discipline to support the firing.

492. Defendants' actions were taken in retaliation for Plaintiff's participation in the Class Action Lawsuit and exercise of her rights under the FLSA, which violated Mr. Karim's statutory rights.

493. Defendants' conduct was willful, malicious, and taken in bad faith in violation of federal law.

494. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Karim of statutory rights under federal law.

495. Based on information and belief, Plaintiff Karim alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FLSA.

496. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered lost wages, loss of future earnings, emotional distress, and other damages.

497. Plaintiff Mr. Karim seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Hussein Karim Karim respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Karim: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: June 9, 2025.

Respectfully Submitted,

By: /s/ *Andres F. Vidales*
Andres F. Vidales, Esq.
Florida Bar No.: 1041185
**VIDALES LAW**
121 Alhambra Plaza, Suite 1000
Coral Gables, FL 33134
Tel: (305) 537-6582
Fax: (786) 551-4166
afv@vidaleslaw.com
legalassistant@vidaleslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I electronically filed the foregoing with the clerk of court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list in the matter specified, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or via U.S. Mail.

By: /s/ *Andres F. Vidales*
**Andres F. Vidales, Esq.**
Florida Bar No.: 1041185

**SERVICE LIST**
Steven A. Siegel, Esq.
Fla Bar No.: 497274
ssiegel@fisherphillips.com
201 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, FL 33301